UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JANICE WILLIAMS | CIVIL ACTION |
| | NO: 16-11650 |
| VERSUS | |
| MMO BEHAVIORAL HEALTH SYSTEMS, LLC, ET AL. | SECTION: "J"(4) |

## ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 23)** filed by Defendant MMO Behavioral Health Systems, LLC ("MMO") and a *Motion to Dismiss* **(Rec. Doc. 36)** filed by Defendant Greenbrier Hospital, LLC ("Greenbrier"). Plaintiff, Janice Williams ("Plaintiff"), opposes both motions (Rec. Docs. 24, 44). Greenbrier filed a reply (Rec. Doc. 48) to Plaintiff's opposition to its motion to dismiss. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the *Motion for Summary Judgment* should be **GRANTED IN PART AND DENIED IN PART**, and the *Motion to Dismiss* should be **GRANTED IN PART AND DENIED IN PART**.

## FACTS AND PROCEDURAL HISTORY

This litigation derives from alleged discriminatory employment practices by Plaintiff's former employer, Greenbrier, and Greenbrier's former parent company, MMO. On July 29, 2015, Plaintiff was terminated from her position as a cook at

1

Greenbrier after she allegedly falsified time and received compensation for time that she had not worked.

Following her termination, Plaintiff filed a claim against Greenbrier with the Louisiana Workforce Commission for unemployment insurance benefits. MMO's HR Director, Unnati Umarvadia, represented Greenbrier throughout those proceedings. Months later and after the proceedings before the Louisiana Workforce Commission had concluded, Plaintiff filed a complaint with the EEOC against MMO, alleging that she was discriminated against based on her race, age, and disability. Plaintiff neither named nor referred to Greenbrier in her EEOC complaint.

On June 24, 2016, after receiving a right to sue letter from the EEOC, Plaintiff filed a complaint against MMO in this Court, asserting causes of action under the Family & Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA"), Age Discrimination in Employment Act ("ADEA"), and the Louisiana Employment Discrimination Law, La. R.S. 23:301, et seq. ("LEDL"). After obtaining leave of court, Plaintiff filed an amended complaint on February 6, 2017, naming Greenbrier as a defendant. As amended, Plaintiff's complaint states federal and state law causes of action for discrimination under the FMLA, ADA, ADEA, and LEDL against MMO and Greenbrier. In addition, Plaintiff alleges a state law defamation claim against both defendants for allegedly defamatory statements made to the Louisiana Workforce Commission. On August 17, 2017, over six months after filing her amended complaint, Plaintiff requested issuance of summons upon Greenbrier. On August 24,

2017, Plaintiff served Greenbrier with a summons and its amended complaint. (Rec. Doc. 30).

On July 14, 2017, MMO filed a motion for summary judgment, which Plaintiff opposed. On September 6, 2017, the Court denied the motion without prejudice to be re-urged at a later date. MMO re-urged its motion for summary judgment on October 13, 2017, and this Court granted the motion to re-urge. On September 30, 2017, Greenbrier filed a motion to dismiss Plaintiff's claims against it. Plaintiff filed an opposition, and Greenbrier filed a reply.

## PARTIES' ARGUMENTS

### I. MMO's Motion for Summary Judgment

The movant argues that Plaintiff has no right of action against MMO because Plaintiff was employed by Greenbrier at the time she was discharged from employment, Plaintiff has never been an employee of MMO, and MMO is a distinct legal entity from Greenbrier. (Rec. Doc. 23, at 2). For these and additional reasons, MMO argues that Plaintiff's FMLA, ADA, ADEA, LADEA, and defamation claims against MMO must fail. Specifically, MMO argues that summary judgment is proper as to Plaintiff's FMLA claim because MMO does not qualify as an "employer" within the meaning of the FMLA because it does not employ fifty or more employees. (Rec. Doc. 23-2, at 2). Likewise, MMO argues that it is entitled to summary judgment on Plaintiff's ADA claim because Plaintiff fails to state in her complaint why she was in the protected group or how she was disabled (Rec. Doc. 23-2, at 3) and on Plaintiff's ADEA claim because the amended complaint fails to assert Plaintiff's age. (Rec. Doc.

3

23-2, at 3-4). MMO argues that summary judgment is also proper as to Plaintiff's claim under the LADEA because Plaintiff fails to provide the specific basis for discrimination, noting only that she was discriminated against on account of her disability, which is not a basis under the statute. (Rec. Doc. 23-2, at 4-5). Finally, MMO asserts that Plaintiff has no right of action for defamation against MMO because the alleged defamatory statements made to the Louisiana Workforce Commission regarding Plaintiff were made by Greenbrier only. (Rec. Doc. 23-2, at 5). Based on the foregoing, MMO seeks summary judgment and dismissal from this lawsuit. (Rec. Doc. 23-2, at 6).

In opposition, Plaintiff argues that summary judgment should not be granted in MMO's favor for two reasons. (Rec. Doc. 24, at 2). First, Plaintiff argues that MMO failed to produce evidence to supports its contention that MMO is not a covered FMLA employer because it does not employ fifty or more employees, noting that "[t]he only support for this premise is a denial contained in paragraph 4 of MMO's answer." (Rec. Doc. 24, at 2). Second, Plaintiff argues that although "it appears that MMO and Greenbrier are distinct legal entities," MMO and Greenbrier operate as a single, integrated enterprise. (Rec. Doc. 24, at 2). In support of this argument, Plaintiff references the following documents in the record:

- The document Unnati Umarvadia sent to the Louisiana Workforce Commission ("LWC") on August 17, 2015, which contains the heading "MMO Behavioral Health Systems" listing the address 201 Greenbrier Boulevard and identifying Ms. Umarvadia as MMO's HR Director. (Rec. Docs. 24, at 3 and 24-1, at 1).
- The Notice of Claim Filed, which is addressed to Greenbrier Hospital located at 201 Greenbrier Boulevard. (Rec. Docs. 24, at 3 and 24-1, at 2).

- The Notice to Base Period Employers, which Plaintiff states appears to be in the handwriting of Ms. Umarvadia. (Rec. Docs. 24, at 4 and 24-1, at 3).
- The LWC request for information concerning Plaintiff's termination, which is addressed to Greenbrier Hospital and "*Greenbrier Holding Company LL." (Rec. Docs. 24, at 4 and 24-1, at 4).
- The Separation of Employment Notice, which contains an MMO heading and indicates the program as "MMO Greenbrier Hospital." (Rec. Docs. 24, at 4 and 24-1, at 5).
- The Time and Attendance Detail Report by Employee for "ALL COMPANIES," which Plaintiff assumes is an MMO form. (Rec. Docs. 24, at 4 and 24-1, at 6).
- The MMO fax cover sheet that Ms. Umarvadia sent to LWC on August 25, 2015. (Rec. Docs. 24, at 4 and 24-2, at 1).
- The MMO fax cover sheet that Ms. Umarvadia sent to LWC on August 31, 2015. (Rec. Docs. 24, at 5 and 24-3, at 1).
- A Notice of Claim Determination addressed to Greenbrier Hospital and "*Greenbrier Holding Company LL" containing a checked "I APPEAL" box and signed by Ms. Umarvadia. (Rec. Docs. 24, at 5 and 24-3, at 2).
- The MMO fax cover sheet that Ms. Umarvadia sent to LWC on September 14, 2015. (Rec. Docs. 24, at 5 and 24-4, at 1).
- An email dated September 14, 2015 from Ms. Umarvadia to the LWC appeal clerk confirming that Ms. Umarvadia will appear at the hearing on behalf of the Employer. Ms. Umarvadia's e-mail signature describes her position as HR Director and references both MMO and Greenbrier. (Rec. Docs. 24, at 5 and 24-5, at 1).
- The Decision of the Administrative Law Judge, which describes Plaintiff's employer as "Greenbrier Hospital" and also references "Greenbrier Holding Co., LL." (Rec. Docs. 24, at 6 and 24-7, at 1).

Based on the foregoing, Plaintiff argues that summary judgment should not be granted because there is a genuine issue of material fact as to whether MMO and Greenbrier are "sufficiently connected through interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control such that there is essentially no distinction between them for purposes of this lawsuit." (Rec. Doc. 24, at 6). Plaintiff asserts that the Declaration of MMO's Chief Executive Officer, Robert Miller, that MMO and Greenbrier are distinct

legal entities "does not address the issue of whether MMO and Greenbrier operated as a single, integrated enterprise for purposes of the statutes under which these claims arise." (Rec. Doc. 24, at 7).

## II.   <u>Greenbrier's Motion to Dismiss</u>

The movant argues that the Court should dismiss all of Plaintiff's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process and Rule 12(b)(6) for failure to state a claim. (Rec. Doc. 36, at 1). First, Greenbrier contends that Plaintiff's amended complaint against Greenbrier must be dismissed for insufficient service of process pursuant to Rule 12(b)(5) because Plaintiff failed to serve Greenbrier within the 90-day timeframe required under Rule 4(m). (Rec. Doc. 36, at 1). Greenbrier emphasizes that despite continuing litigation against MMO after amending her complaint, Plaintiff failed to request issuance of summons upon Greenbrier until 200 days after the amendment. (Rec. Doc. 36-1, at 5-6). Accordingly, Greenbrier concludes that Plaintiff's claims against Greenbrier should be dismissed for insufficient service of process. (Rec. Doc. 36-1, at 6).

Greenbrier also moves to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Rec. Doc. 36-1, at 6). Greenbrier argues that Plaintiff fails to meet the minimum pleading standard for three reasons. (Rec. Doc. 36-1, at 7). First, Greenbrier asserts that Plaintiff failed to administratively exhaust her discrimination claims against it by failing to name Greenbrier in her EEOC Charge of Discrimination. (Rec. Doc. 36-1,

at 7-8).[1] Second, Greenbrier contends that Plaintiff's ADA, ADEA, LEDL, and defamation claims against it are time-barred. (Rec. Doc. 36-1, at 8-11). Greenbrier argues that Plaintiff's untimeliness cannot be cured because the amended complaint does not relate back to the date she filed her original complaint. (Rec. Doc. 36-1, at 11-16). Finally, Greenbrier argues that Plaintiff's conclusory factual allegations are insufficient to state a claim against Greenbrier. (Rec. Doc. 36-1, at 16-18). Greenbrier emphasizes that Plaintiff's amended complaint asserts no facts from which the Court could plausibly infer that Greenbrier violated the FMLA or took any employment actions based on Plaintiff's age[2] or alleged disability.[3] (Rec. Doc. 36-1, at 17-18). Based on the foregoing, Greenbrier concludes that all claims asserted against Greenbrier in the amended complaint must be dismissed as a matter of law. (Rec. Doc. 36-1, at 18).

Plaintiff raises two arguments in opposition to Greenbrier's motion to dismiss. (Rec. Doc. 44). First, Plaintiff argues that its failure to serve Greenbrier with the amended complaint timely is not fatal to its claims against Greenbrier because this Court failed to notify Plaintiff of her noncompliance with Rule 4(m) "as required" by Local Rule 16.2.[4] (Rec. Doc. 44, at 1-2). Plaintiff also contends that she "reasonably

---

[1] Plaintiff's EEOC Charge of Discrimination named only MMO as the Respondent. (Rec. Doc. 36-1, at 8).
[2] Greenbrier contends that Plaintiff's amended complaint "does not even identify her age, or even that she is covered by the ADEA: it has *no facts* regarding her age, *no facts* regarding Greenbrier's knowledge of her age, and *no facts* regarding the age of her replacement or a similarly-situated comparator." (Rec. Doc. 36-1, at 18).
[3] Greenbrier notes that Plaintiff "provides *no facts* plausibly suggesting that she qualified as disabled given what appears to be routine and temporary medical conditions, *no facts* regarding how Greenbrier treated similarly-situated comparators who engaged in the same work-related misconduct and *no facts* otherwise sufficient to raise an inference of disability discrimination." (Rec. Doc. 36-1, at 17).
[4] Local Rule 16.2 provides that "[t]o ensure compliance with *FRCP 4(m)*, the case manager in each section of court, once a month or as often as the court deems proper, must call all cases before the court that have been pending 120 days or longer after filing of the complaint, and in which issue has not been joined. The call must be on the regular

expected MMO to join Greenbrier as a third party defendant pursuant to FRCP 19." (Rec. Doc. 44, at 3). Without explanation, Plaintiff concludes that she "acted to cure the deficiency promptly." (Rec. Doc. 44, at 3).

Next, Plaintiff contests Greenbrier's assertion that it is entitled to dismissal of all claims against it due to Plaintiff's failure to exhaust administrative remedies, failure to timely file, and failure to raise more than conclusory allegations. (Rec. Doc. 44, at 4-7). Regarding the failure to name Greenbrier in the EEOC Charge, Plaintiff asserts that she had no information available to her at the time of filing to indicate that MMO and Greenbrier were separate entities. (Rec. Doc. 44, at 5). Without citing any authority, Plaintiff concludes that her failure to include Greenbrier "cannot be laid at the feet of the plaintiff" because MMO was named in the EEOC Charge, MMO "was the only party in a position to know of Greenbrier's involvement," and MMO "chose to remain silent." (Rec. Doc. 44, at 5). Plaintiff next argues that her failure to timely file is cured by her amended complaint, which relates back to the date of filing the original complaint. (Rec. Doc. 44, at 6). Plaintiff contends that the requirements for relation back are satisfied because "Greenbrier actually knew, constructively knew, or should have known that Plaintiff's action would have been brought against it" given that "MMO's interest and Greenbrier's interest were identical at the time the plaintiff was terminated." (Rec. Doc. 44, at 6). Finally, Plaintiff argues that if the Court concludes the allegations in the amended complaint are conclusory, an

---

day and time assigned for submission of motions, and the clerk must give 14 days' notice of the call to all counsel of record."

opportunity to cure the deficiency in a second amended complaint must be provided. (Rec. Doc. 44, at 7).

Greenbrier raises two points in its reply to Plaintiff's opposition. (Rec. Doc. 48). First, Greenbrier asserts that the responsibility for effectuating service rests upon Plaintiff, not this Court. (Rec. Doc. 48). Greenbrier notes that Local Rule 16.2 does not toll the 90-day period for service required under Rule 4(m) as Plaintiff appears to suggest. (Rec. Doc. 48, at 2). Nevertheless, Greenbrier points out that "this Court did in fact previously warn [Plaintiff] of non-compliance with Rule 4(m)."[5] (Rec. Doc. 48, at 2).

Second, Greenbrier argues that Plaintiff's failure to address the elements required for relation back establishes that her amended complaint does not relate back to the original complaint. (Rec. Doc. 48, at 2-6). Greenbrier avers that Plaintiff incorrectly focuses on the "identity of interest" shared by MMO and Greenbrier at the time of Plaintiff's termination, rather than at the time she filed the original complaint. (Rec. Doc. 48, at 3). Greenbrier argues that "[b]ecause MMO and Greenbrier were not affiliated at the time Plaintiff filed her Charge of Discrimination, the original Complaint, and the First Amended Complaint (all of which occurred after November 10, 2015), there is no basis for imputing notice [of the litigation at issue] from MMO to Greenbrier." (Rec. Doc. 48, at 4-5). Greenbrier goes on to assert that even if Plaintiff could prove there were an identity of interest between MMO and

---

[5] Greenbrier contends that the Court warned Plaintiff of her failure to timely serve MMO with the original complaint during a docket call in October 2016. Greenbrier goes on to note that Plaintiff cites to no authority to support her implied contention that the Court should have warned her again after she failed to timely serve Greenbrier with the amended complaint. (Rec. Doc. 48, at 2).

Greenbrier at the time Plaintiff filed her original complaint, dismissal of Plaintiff's claims against Greenbrier is still required because Plaintiff cannot establish that Greenbrier received sufficient notice of this lawsuit given Plaintiff's failure to serve MMO within 90 days after filing the complaint. (Rec. Doc. 48, at 5). Specifically, Greenbrier alleges that Plaintiff's notice to MMO could be imputed to Greenbrier only if MMO was served with the original complaint within the time required by Rule 4(m), which did not occur here.[6] (Rec. Doc. 48, at 5-6).

## LEGAL STANDARD

### I. Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be

---

[6] Greenbrier notes that Plaintiff filed the original complaint on June 26, 2016, but she did not serve MMO until September 26, 2016 (ninety-four days later). (Rec. Doc. 48, at 5).

satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.* at 325; *Little*, 37 F.3d at 1075.

## II.    <u>Motion to Dismiss</u>

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the

claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal citations omitted). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

Under Rule 12(b)(5), a defendant may assert insufficient service of process as a defense to a claim for relief. *Lewis v. La. Dep't of Transp. & Dev.*, No. 10-4600, 2011 WL 3502327, at *1 (E.D. La. Aug. 10, 2011). Once the validity of service of process has been contested, the plaintiff bears the burden of establishing its validity. *Carimi*

*v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992). A district court has broad discretion to dismiss an action pursuant to Rule 12(b)(5) for insufficient service of process. *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir. 1994).

## DISCUSSION

### I.  MMO's Motion for Summary Judgment

#### a.  FMLA

The parties do not explicitly address who bears the burden of establishing that MMO is an "employer" subject to the FMLA. MMO contends that it is entitled to judgment in its favor on Plaintiff's FMLA claim because Plaintiff cannot show that it employs at least fifty employees. Plaintiff argues that MMO has failed to come forward with sufficient summary judgment evidence to affirmatively demonstrate that MMO does not meet the FMLA employee threshold.

The FMLA requires a covered employer to allow an eligible employee up to twelve weeks of unpaid leave to address the employee's "serious health condition" or that of a family member. *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2001) (quoting 29 U.S.C. § 2612(a)(1)(D)). "To ensure employees the right to take leave, the FMLA prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right" provided by the Act." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017) (quoting 29 U.S.C. § 2615(a)(1)). In order to be subject to liability under the FMLA, one must "employ[] 50 or more employees for each working day during each of 20 or

more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i).

It is well-established that the plaintiff has the burden of showing that the employer meets the "50 or more employees" statutory threshold. *See Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 357 (5th Cir. 2006) ("[T]he threshold number of employees for application of the FMLA is an element of a plaintiff's claim for relief"); *see also Lloyd v. Swifty Transp., Inc.*, (7th Cir. 2009) 552 F.3d 594, 600. Here, Plaintiff attempts to place the burden of proof on MMO, thereby failing to create any issue of fact as to whether MMO, or MMO and Greenbrier as a single enterprise, employed fifty or more employees. Accordingly, MMO is entitled to judgment as a matter of law on Plaintiff's FMLA claim.

### b. Whether MMO is an "Employer" Subject to Liability under the ADEA or ADA

The ADEA provides that it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).[7]

An entity cannot be held liable for discriminatory employment actions under the ADEA unless it qualifies as an "employer" under the statute. *See* 29 U.S.C. § 623. It is well-established that superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer.

---

[7] The ADEA defines an employer as: "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."

*Trevino v. Celanese Corp.*, 701 F.2d 397, 403–04 (5th Cir. 1983). To determine whether a parent corporation and its subsidiary may be regarded as a "single employer" under the ADEA, courts consider the following four factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* Courts applying these factors have focused, almost exclusively, on the second factor: centralized control of labor relations. *Id.*; *see also Vance v. Union Planters Corp.*, 279 F.3d 295, 297 (5th Cir. 2002); *Chaiffetz,* 798 F.2d at 735 ("We place[ ] highest importance on the second [*Trevino*] factor."). "This criterion has been further refined to the point that [t]he critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Trevino*, 701 F.2d at 404 (citation omitted); *see also Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 344 (5th Cir. 2007).

Here, the Court finds that Plaintiff has presented evidence of common ownership, interrelation of operations, and, more importantly, centralized control of labor relations between MMO and Greenbrier. First, it is uncontested that Greenbrier was MMO's wholly-owned subsidiary at the time of Plaintiff's termination. In addition, MMO's HR Director, Unnati Umarvadia, appeared as the only representative on behalf of Greenbrier in Plaintiff's post-employment proceedings held before the LWC. The Court, however, is aware that the mere existence of common ownership and management does not, without more, justify aggregation; rather, there must be evidence that the parent corporation was the "final

decision-maker in its subsidiary's employment decisions." *Lusk v. Foxmeyer Health Corp.,* 129 F.3d 773, 778 (5th Cir. 1997). Such evidence is contained in the record. Plaintiff cites to a document titled "Separation of Employment Notice" dated July 29, 2015—Plaintiff's date of termination. The document provides that Plaintiff was terminated for "falsification of time card and hours worked." Significantly, the document bears MMO's letterhead, lists "MMO Greenbrier Hospital" as Plaintiff's employer, and is signed by MMO's HR Director. Thus, based on the Separation of Employment Notice, an issue of fact exists as to MMO's involvement with Greenbrier's personnel decisions, including to what extent MMO was the final decision maker regarding Plaintiff's employment with Greenbrier. *See Lusk*, 129 F.3d at 778 (holding that a parent and subsidiary were not a single enterprise because the court concluded, *inter alia*, that the two companies did not share the same human resources department). Accordingly, the Court concludes that Plaintiff has cited to specific evidence sufficient to create a genuine issue of material fact as to whether MMO and Greenbrier are a single-enterprise. Accordingly, summary judgment on this point is inappropriate.

Furthermore, although its applicability is not argued by either party, the Court reaches the same conclusion with respect to MMO's employer status under the ADA's "hybrid economic realities/common law control test." In determining whether an entity is an employer under the ADA, the Fifth Circuit applies a "hybrid economic realities/common law control test." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015) (citation omitted). "The economic realities component of our

test has focused on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.* (citation omitted). The "control" component of the test, however, is the most important element of the analysis. *Id.* In examining the "control" component, the court considers "whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule." *Id.* (citation omitted).

Although Plaintiff has not provided any evidence that MMO paid her salary, withheld taxes, provided benefits, or set the terms and conditions of employment, Plaintiff, as discussed *supra*, has produced evidence sufficient to create an issue of fact regarding MMO's possible control over Greenbrier's personnel decisions. *See Burton*, 789 F.3d at 227 (noting that the court's emphasis on the common law control test is dispositive); *see also Johnson v. Manpower Prof'l Servs., Inc.*, 442 F. App'x 977, 982 (5th Cir. 2011) (concluding that the defendant was the plaintiff's employer based on the common law control test although all of the factors under the economic realities test pointed to another entity being the plaintiff's employer). Thus, "[g]iven the "substantial overlap in the analytical framework among the employment discrimination statutes," the Court is inclined to reach the same decision as to MMO's employer status under both the ADA and ADEA. *See Burton*, 789 F.3d at 227 n. 2; *see also Lusk*, 129 F.3d at 778 ("The interrelation of operations element of the single employer test ultimately focuses on whether the parent corporation . . . *actually exercised a degree of control* beyond that found in the typical parent-subsidiary

relationship") (emphasis added); *see also Smith-Schrenk v. Genon Energy Services*, 2015 WL 150727, at \*11-\*12 (S.D. Tex. Jan. 12, 2015) (applying the single enterprise test, rather than the common law control test, when analyzing whether a parent corporation was subject to suit under the ADA). Based on the foregoing, MMO is not entitled to judgment as a matter of law as to Plaintiff's ADEA and ADA claims.

### c. LEDL Claims

The LEDL defines an "employer" as a "commercial entity . . . receiving services from an employee and, in return, giving compensation of any kind to an employee." La. Stat. Ann. § 23:302(2). "Central to the determination of whether one is an employer for purposes of the LEDL is whether the defendant paid the plaintiff's wages and withheld federal, state, unemployment, or social security taxes from his check." *Dejoie v. Medley,* 9 So. 3d 826, 830 (La. 2009).

Plaintiff has not created an issue of fact as to whether she provided services to MMO and whether MMO paid her any type of compensation. In fact, Plaintiff's W-2 tax statement reflects that Greenbrier paid Plaintiff's wages and withheld federal, state, unemployment, and social security taxes from her check. (Rec. Doc. 23-4). Accordingly, MMO is entitled to judgment as a matter of law on Plaintiff's LEDL claims. *See Langley v. Pinkerton's Inc.*, 220 F. Supp. 2d 575 (M.D. La. 2002) (granting summary judgment in favor of an alleged employer because the alleged employer provided no compensation benefits to the plaintiff nor withheld federal, state, unemployment, or social security taxes for Plaintiff).

### d. Defamation

Finally, MMO seeks summary judgment with respect to Plaintiff's defamation claim. Plaintiff alleges that MMO made defamatory statements about her to the LWC. MMO contends that it did not make any statements to the LWC, and that to the extent any defamatory statements were made to the LWC, they were made by Plaintiff's former employer, Greenbrier. Though not fully articulated by MMO, the Court interprets MMO's statements as an attack on Plaintiff's ability to establish that MMO was the publisher of the allegedly defamatory statements.

Defamation is a tort involving the invasion of a person's interest in his or her reputation and good name. *Costello v. Hardy,* 2003-1146, p. 12, (La. 1/21/04), 864 So. 2d 129, 139. Four elements are necessary to establish a claim for defamation under Louisiana law: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Id.* ("Thus, in order to prevail on a defamation claim, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages."). If even one of the required elements of the tort is lacking, the cause of action fails. *Id.* (citation omitted). When a defamatory statement is made by an employee in the course and scope of his or her employment, the employer can be held vicariously liability. *See Trentecosta v. Beck,* 96–2388 at 8–10 (La. 10/21/97), 703 So. 2d at 558–559. Under Louisiana law, "an employee's conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform,

occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." *White v. United States*, 419 F. App'x 439, 442 (5th Cir. 2011) (quoting *Orgeron v. McDonald,* 639 So. 2d 224, 226–27 (La. 1994)).

As evidenced by the record, MMO's HR Director appeared on behalf of Greenbrier as its only representative during the proceedings before the LWC. MMO neither disputes its HR Director's participation in the LWC proceedings nor argues that its HR Director's statements to the LWC were made outside the scope of her employment. Thus, it follows that to the extent any defamatory statements were made to the LWC, they were made by MMO's HR Director, acting within the scope of her employment for the benefit of Greenbrier. Importantly, the fact that MMO's HR Director made statements as a representative of Greenbrier—rather than MMO— does not absolve MMO of liability for the alleged tortious conduct of its employee. *See Ermert v. Hartford Ins. Co.*, 559 So. 2d 467, 476–77 (La. 1990) ("Because vicarious liability is imposed based upon the attribution of business-related risks to the enterprise, specific conduct may be considered within the scope of employment even though it is done in part to serve the purposes of the servant or of a third person."). Therefore, the Court finds that MMO is not entitled to judgment as a matter of law with respect to Plaintiff's defamation claim.

## II. Greenbrier's Rule 12(b)(5) Motion to Dismiss for Failure to Timely Serve

Greenbrier asks the Court to dismiss Plaintiff's claims against it for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5)

due to Plaintiff's failure to effect timely service under Rule 4(m).[8] Pursuant to Rule 4(m), a district court has two choices when a plaintiff fails to serve a defendant within 90 days: it may either "dismiss the action without prejudice . . . or direct that service be effected within a specified time." Fed. R. Civ. P. 4(m); *Foster v. Rescare*, No. 16-670, 2016 WL 3388387, at *3 (E.D. La. June 20, 2016). If, however, the plaintiff shows good cause for the failure, the district court must extend the time of service for an appropriate period. *Id.*; *see also Grimball v. New Orleans City*, No. 10-3657, 2012 WL 1397678, at *5 (E.D. La. Apr. 23, 2012) (citing *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996)). The plaintiff has the burden of proving good cause for failure to effect timely service. *Foster*, 2016 WL 3388387, at *3 (citing *Sys. Signs Supplies v. U.S. Dep't of Justice, Washington, D.C.*, 903 F.2d 1011, 1013 (5th Cir. 1990)). "'[G]ood cause' under Rule 4(m) requires 'at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice.'" *Grimball*, 2012 WL 1397678, at *5 (citing *Lambert v. United States*, 44 F.3d 296, 299 (5th Cir. 1995)). This Court has determined that "[t]o demonstrate good cause, a plaintiff must 'make a showing of good faith and show some reasonable basis for noncompliance within the time specified." *Foster*, 2016 WL 3388387, at *3 (citing *Sys. Signs Supplies*, 903 F.2d at 1013). Thus, "one is required to be diligent in serving process, as well as pure of heart, before good cause will be found." *Grimball*, 2012 WL 1397678, at *5 (citing *Resolution*

---

[8] "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

*Trust Corp. v. Starkey*, 41 F.3d 1018, 1022 (5th Cir. 1995)). Where a party requests an extension of time, relevant factors used to determine whether there has been "excusable neglect" include: "'the danger of prejudice to the [non-movant], the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Id.* (quoting *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 161 n.8 (5th Cir. 2006)).

It is undisputed that Plaintiff did not effectuate timely service of the amended complaint on Greenbrier.[9] Nevertheless, the Court need not address whether Plaintiff has demonstrated "good cause" for her failure to properly serve Greenbrier within the 90-day window provided by Rule 4(m). Assuming arguendo, that "good cause" did not exist, the Court has broad discretion in determining whether dismissal for failure to timely serve is warranted. *See George v. U.S. Dep't of Labor*, 788 F.2d 1115, 1116 (5th Cir. 1986). As a general matter, this Court denies motions to dismiss under Rule 12(b)(5), and grants plaintiffs additional time to properly complete service, unless there is a clear showing of prejudice to the defendant. *See Gabriel v. United Nat'l Ins. Co.*, 259 F.R.D. 242, 245 (E.D. La. 2009) (additional time granted due to a lack of prejudice to the defendant, and delay was not caused by intentional conduct); *Roulston v. Yazoo River Towing, Inc.*, No. 03-2791, 2004 WL 1043140, at *2 (E.D. La. May 6, 2004) (additional time granted where defendant did not demonstrate

---

[9] Although Plaintiff was granted leave to file an amended complaint naming Greenbrier as a defendant on February 6, 2017, Plaintiff did not serve Greenbrier until August 24, 2017. Accordingly, Plaintiff failed to serve Greenbrier within the 90-day timeframe as required under Fed. R. Civ. P. 4(m).

prejudice); *Alden v. Allied Adult & Child Clinic, L.L.C.*, No. 01-371, 2002 WL 1684553, at *2 (E.D. La. July 22, 2002) (dismissal denied due to a lack of prejudice to the defendant).

Here, Greenbrier has made no assertion that it would be prejudiced if this Court granted Plaintiff additional time to properly complete service. Further, service has been perfected in this case—albeit late—and the Court does not find that dismissal is warranted for the now-repaired defect in service. *Peters v. St. Charles Par. Sch. Dist.*, No. CV 15-6600, 2017 WL 1250961, at *4 (E.D. La. Apr. 5, 2017). Accordingly, the Court will not dismiss Plaintiff's complaint on the basis that it was served outside of Rule 4(m)'s 90-day window.

### III. **Greenbrier's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

#### a. **Plaintiff's Claims Under the ADEA and ADA**

Greenbrier contends that the Court should dismiss Plaintiff's ADA and ADEA claims because Plaintiff failed to exhaust her administrative remedies against Greenbrier by failing to name Greenbrier in Plaintiff's EEOC Charge.[10] This Court agrees.

---

[10] It is undisputed that Plaintiff failed to name Greenbrier in the EEOC charge. Greenbrier attached Plaintiff's EEOC complaint to its motion to dismiss. A court may take judicial notice of EEOC documents as a matter of public record when deciding a Rule 12(b)(6) motion. *See Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir.1994); *see also Prewitt v. Cont'l Auto.*, 927 F. Supp. 2d 435, 447 (W.D. Tex. 2013). Therefore, the Court's reference to EEOC documents does not convert Greenbrier's 12(b)(6) motion into a motion for summary judgment. *See Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir.2011) ("[T]he district court's application of judicial notice [to public records] did not transform the motion to dismiss into a motion for summary judgment."). Accordingly, this Court takes judicial notice of the EEOC documents attached to Greenbrier's motion to dismiss merely for the purpose of determining whether Plaintiff has exhausted her administrative remedies against Greenbrier.

Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. *Id.* (citing *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788–89 (5th Cir. 1996)). The ADA and ADEA require a party to file a charge of discrimination with the EEOC as a prerequisite to filing suit. *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996); *see also Stith v. Perot Sys. Corp.*, 122 F. App'x 115, 118 (5th Cir. 2005) ("Filing a charge with the EEOC is a condition precedent to the filing of a title VII or ADEA suit."). Typically, a party not named in an EEOC charge may not be sued under the ADA or ADEA. *See E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). However, an EEOC charge against one entity is sufficient to exhaust administrative remedies as to a different unnamed entity if there is a "clear identity of interest" between the two. *See id.* at 481-82; *see also Hartz v. Adm'rs of the Tulane Educ. Fund.,* 275 F. App'x 281, 286 (5th Cir. 2008); *see also Nigro v. St. Tammany Par. Hosp.*, 377 F. Supp. 2d 595, 600 (E.D. La. 2005) (noting that a party not named in an EEOC charge may not be sued unless there is a clear identity of interest between it and the party named in the charge or it has unfairly prevented the filing of an EEOC charge). In deciding whether an unnamed party may be sued under the ADA or ADEA, courts consider the following factors:

> (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether under the circumstances, the interests of a named [party] are so similar as the unnamed party's that

for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceeding; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Simbaki, Ltd.*, 767 F.3d at 482-83.

Plaintiff alleges that MMO and Greenbrier utilized common management and had centralized control of their labor relations. Plaintiff contends that MMO's Human Resource Director, Unnati Umarvadia, authorized Plaintiff's termination, signed the termination notice, testified at the unemployment hearing on behalf of Greenbrier, and was actively involved in all decisions concerning Plaintiff's employment with Greenbrier. This alleged conduct all occurred during 2015, which was months before Plaintiff filed her EEOC complaint against MMO on March 13, 2016. Importantly, MMO and Greenbrier were legally distinct entities at the time Plaintiff filed her EEOC complaint.[11] Although, Plaintiff's allegations, taken as true, possibly establish that MMO and Greenbrier may have shared a clear identity of interest in the past, the Court finds that they are insufficient to cure Plaintiff's failure to name Greenbrier in the EEOC charge. At the time Plaintiff filed her EEOC charge against MMO, MMO was no longer the owner of Greenbrier, and Plaintiff has not alleged that she was ever prevented from identifying and naming her actual employer—Greenbrier—in her charge. *See Hartz v. Administrators of Tulane Educational Fund*, 275 Fed. Appx. 281, 287 (5th Cir. 2008); *see Ferrell v. Shell Oil Co.*, No. CIV.A. 95-0568, 1995 WL

---

[11] Further, Plaintiff admits in her opposition that "the transaction whereby MMO spun off Greenbrier occurred on November 10, 2015." Plaintiff filed her EEOC complaint on March 13, 2016.

739878, at *5 (E.D. La. Dec. 12, 1995). Accordingly, the Court finds that Plaintiff has failed to administratively exhaust her remedies against Greenbrier.

### b. Plaintiff's LEDL and Defamation Claims

Next, MMO argues that Plaintiff's defamation and LEDL claims are prescribed. A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling. *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014) (citing *Jones v. Alcoa, Inc.,* 339 F.3d 359, 366 (5th Cir. 2003)).

Defamation is a tort under Louisiana law subject to a one-year prescriptive period that begins to run from the date on which the injury or damage is sustained. La. Civ. Code art. 3492. The LEDL likewise imposes a one-year prescriptive period for filing an employment discrimination claim. La. R.S. 23:203(D). However, the LEDL's one-year prescriptive period is suspended for up to six months during the pendency of any administrative review or investigation by the EEOC. *Id.* Thus, at the very latest, employment discrimination claims under the LEDL must be filed within eighteen months of the alleged discriminatory misconduct. *See Kirkland v. Big Lots Stores, Inc.*, No. CIV. 12-00007, 2013 WL 495782, at *4 (W.D. La. Feb. 7, 2013).

The prescriptive period on Plaintiff's LEDL claim began to accrue on her termination date of July 29, 2015. The prescriptive period on Plaintiff's defamation claim also began to accrue on July 29, 2015, as this is the date on which Plaintiff alleges that Greenbrier made defamatory statements about her to the LWC. Nevertheless, Plaintiff did not file suit against Greenbrier until February 6, 2017, which was more than six months after the expiration of the prescriptive period for

her defamation claim, more than four months after the LEDL's prescriptive period had lapsed, and more than eighteen months after the alleged discriminatory conduct occurred.[12] Accordingly, the Court finds that Plaintiff's defamation and LEDL claims are prescribed.

### c. The First Amended Complaint does not relate back to the original complaint

Plaintiff acknowledges that all of her state law claims are prescribed unless the Court finds that the claims in her first amended complaint against Greenbrier relate back to her original complaint.[13] Plaintiff bears the burden of showing that the amended complaint relates back. *Searls v. Insureco Agency and Insurance Services*, Civil Action No. 07–4250, 2009 WL 35340 at *2 (E.D.La. Jan. 6, 2009) (citing *Dodson v. Hillcrest Securities*, Nos. 92–2353, 92–2381, 1996 WL 459770 at *10 (5th Cir. July 24, 1996)).Whether an amendment relates back to the date of the original complaint is governed by Rule 15(c) of the Federal Rules of Civil Procedure. Specifically, the Rule provides:

> (1) An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out— in the original pleading; or

---

[12] Plaintiff filed an EEOC charge against MMO 182 days later on January 27, 2016. By filing this EEOC complaint, the statute of limitations was tolled until March 29, 2016 when the EEOC issued the Dismissal and Notice of Right to Sue.

[13] The doctrine of "relation back" allows an amendment to a pleading to relate back to the date of the original complaint, for statute of limitations purposes, under standards set out in Rule 15(c) of the Federal Rules of Civil Procedure. *E.g.*, *Sanders-Burns v. City of Plano*, 594 F.3d 366, 372–72 (5th Cir. 2010).

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, **if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving** the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought **against it, but for a mistake concerning the proper party's identity.**

Fed. R. Civ. P. 15(c)(1)(C) (emphasis added).

Here, Plaintiff amended her complaint to add Greenbrier as a defendant. Therefore, the relevant provision is 15(c)(1)(C). This Court has previously stated the relation back test as "when an amended complaint changes the name of a party or substitutes a new party, (1) it must arise out of the same circumstances asserted in the original pleading, (2) the new party must have received sufficient notice of the action so as not to be prejudiced, (3) the proper party must at least have constructive knowledge that but for a mistake concerning the identity of the proper party, suit would have been brought against it, and (4) the second and third requirements must occur within 120 days of the original complaint, or longer if good cause is shown." *First Emmanuel Baptist Church v. Colony Ins. Co.*, No. 07–8841, 2008 WL 4948778, at *2 (E.D. La. Nov. 18, 2008) (Africk, J.) (quoting *Allstate Ins. Co. v. Torres*, No. 06–5206, 2007 WL 3102791, at *3 (E.D. La. Oct. 23, 2007)).

Greenbrier contends that Plaintiff's amended complaint does not relate back to Plaintiff's original complaint because Greenbrier did not have timely notice of the first amended complaint and Plaintiff did not make a "mistake" concerning the identity of the proper party. This Court finds that the amended complaint does not

relate back to the date of filing the original complaint because Greenbrier did not receive notice of the first amended complaint within the time period provided by Rule 4(m) for serving the summons and complaint as is required by Rule (c)(1)(C). Plaintiff filed the first amended complaint naming Greenbrier as a defendant on February 6, 2017. In order to comply with Rule (c)(1)(C), Plaintiff would have had to give Greenbrier notice of the action by May 7, 2017. However, Plaintiff did not request issuance of summons until August 17, 2017 and did not effect service on Greenbrier until August 24, 2017. Thus, Greenbrier did not have timely notice of the action.

Even if Plaintiff had presented evidence to show that Greenbrier and MMO shared an identity of interest at the time litigation against MMO was commenced, notice upon MMO will be imputed to Greenbrier only if MMO was served with the original complaint within the time period provided by Rule 4(m), *i.e.*, within 90 days of commencement of the action. *See Searls v. Insureco Agency and Ins. Services*, 2009 WL 35340, *4 (E.D. La. Jan. 6, 2009). Here, the record reflects that Plaintiff filed suit against MMO on June 24, 2016 and served MMO on September 26, 2016—94 days after Plaintiff filed her original complaint and, thus, after the Rule 4(m) deadline. Because MMO did not receive notice of the action within the time period provided by Rule 4(m), it follows that Greenbrier also did not receive such notice. Accordingly, the amended complaint naming Greenbrier as a defendant does not relate back to the date of filing the original complaint. *See Searls*, 2009 WL 35340, *4 (concluding that an amended complaint naming a second defendant did not relate back to the original

complaint where the plaintiff failed to serve the original complaint on the original defendant within the time required under Rule 4(m)).

### d. Plaintiff fails to state a claim against Greenbrier

Greenbrier argues that Plaintiff's conclusory facts alleged in the amended complaint are insufficient to support an FMLA claim against Greenbrier. This Court agrees. Though Plaintiff alleges that she had bone spurs and plantar fasciitis, she provides no facts regarding her leave of absence or additional leave that was requested and denied.

Nevertheless, "[d]ismissal is a harsh remedy … and the Court is cognizant of the Fifth Circuit's instruction that a motion to dismiss under Rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Mays v. Bd. of Commissioners Port of New Orleans*, No. CIV.A. 14-1014, 2015 WL 1245683, at *7 (E.D. La. Mar. 18, 2015) (quoting *Beanal v. Freeport–McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir.1999)). In lieu of granting a motion to dismiss, a court may grant a plaintiff leave to amend her complaint. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006). Accordingly, the Court will grant Plaintiff leave to file a second amended complaint, if she chooses to do so, to sufficiently allege her FMLA claims against Greenbrier.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant MMO's *Motion for Summary Judgment* (Rec. Doc. 23) is **GRANTED IN PART** as to Plaintiff's FMLA and LEDL

claims against MMO; and **DENIED IN PART** as to Plaintiff's ADA, ADEA, and defamation claims against MMO.

**IT IS FURTHER ORDERED** that Defendant Greenbrier's *Motion to Dismiss* (Rec. Doc. 36) is **GRANTED IN PART** as to Plaintiff's ADA, ADEA, defamation, and LEDL claims against Greenbrier, which are **DISMISSED with prejudice**; and **DENIED IN PART** as to Plaintiff's FMLA claim. Plaintiff may file a second amended complaint sufficiently alleging her FMLA claim against Greenbrier within 21 days of this date.

New Orleans, Louisiana, this 9th day of November, 2018.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE